B007 Fee Pd
Cat 4

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELANIE LOUISE MELLON, and

MARVIN RICHARD MELLON,
    Husband and Wife,

        PLAINTIFFS

VS

AMERICAN AIRLINES GROUP, INC.

        _____ DEFENDANT

**FILED**

APR 16 2026

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

NO: 1:26-CV-103

## VENUE

1. Venue is proper as all physical acts complained of herein occurred on January 3, 2026 at the Erie International Airport, Tom Ridge Field, situate in City of Erie, County of Erie, Commonwealth of Pennsylvania.

## JURISDICTION

2. Jurisdiction is proper as the issues complained of involve Federal Statutes; violations of the Americans With Disabilities Act, (ADA) 42 U.S.C.S. §§12131 – 12165, and violations of 29 U.S.C.S. §794 (Rehabilitation Act) and violations of 49 U.S.C. §41705 (Air Carriers Access Act). This Honorable Court having original Jurisdiction of Federal Questions involving violations pertaining to Federal Statutes, as set forth herein:

## FEDERAL STATUTES VIOLATED
## AND EXPLANATION OF RIGHTS OF A DISABLED PERSON

A. **Disability,** when referenced in this complaint shall mean and include any and all disability classifications physical, metabolic, systemic, as defined in the ***Americans with Disabilities Act 42 U.S.C.S. §§12131-121165*** *and the Rehabilitation Act,* each prohibit public

entities from excluding, denying access to or otherwise discriminating against any person because of a disability *42 U.S.C.S. §12132; 29 U.S.C.S., §794 ; 49 C.F.R. §37.5 as adopted by the Secretary of Transportation pursuant to the above statutes prohibit discrimination against an individual with a disability in connection with transportation services.* The Americans With Disabilities Act may also be referred to as the **ADA.**

The <u>Americans with Disabilities Act (ADA)</u> defines a disability as a physical or mental impairment that substantially limits one or more major life activities, a person with a record of such an impairment, or a person regarded as having such an impairment. This definition is construed broadly to include major bodily functions, episodic conditions, or conditions in remission. Under the ADA, a person is considered to have a disability if they meet **any** of these criteria:

**Actual Disability:** A physical or mental impairment that substantially limits one or more major life activities (e.g., walking, seeing, hearing, speaking, breathing, learning, or working).

**Record of Disability:** A history or record of such an impairment

**Regarded As:** Being treated as having a physical or mental impairment,

4. Training, when referenced in this complaint shall mean and include training as required by the *AMERICANS WITH DISABILITIES ACT, ACCOMMODATIONS , 49 C.F.R. §37.209* requiring public transportation entities to provide refresher training to personnel as needed to ensure proficiency concerning access to facilities by disabled persons.

5. **Accommodation,** as referenced in this complaint shall mean and include, *49 C.F.R. §37.167(e); 49 C.F.R. §37.173 requiring proper assistance and treatment of individuals with disabilities in a respectful and  courteous way.   49 C.F.R. §37.207 PROHIBING any operator to deny transportation to passengers with disabilities or to fail or refuse to comply with any applicable provision of Title 49 (Transportation); Part 37 (Transportation Services for Individuals with Disabilities).*

6. **Air  Carrier Access Act, (ACAA)** as referenced in this complaint shall mean and include *49 U.S.C. §41705 prohibiting discrimination on the basis of a disability.*

7. Department of Transportation, (DOT) when referred to in this complaint shall mean *Title 14 C.F.R. Part 382 refusing transportation to people on the basis of disability.* If a carrier excludes a person with a disability on safety grounds, the carrier must provide a written explanation of the decision.

## PARTIES

3. Plaintiff, Melanie Louise Mellon, hereinafter referred to as wife Plaintiff, is a 73 year old disabled person, as defined by the ADA having a physical impairment that substantially limits one or more major life activities, she is a person with a record of such an impairment, a person regarded as having physical disabilities, easily ascertainable by others, evidenced by her gait and physical appearance, requiring an accommodation when boarding an aircraft. Additionally she have metabolic, medical, disabilities, requiring her the necessity of being granted accommodation and treatment by defendant to facilitate her safe travel. Wife Plaintiff's disabilities require her to have "Task Trained Service Animals" to travel with her.

3.(a) Plaintiff Marvin Richard Mellon, husband of wife Plaintiff, is an interested and necessary party and has suffered losses as set forth herein. Both Plaintiffs domiciled in Florida, however having a residence in Erie, PA.

4. Defendant American Airlines Group, Inc. is a foreign corporation having its corporate office in Fort Worth, Texas. Defendant *American Airlines Group operates through its main carrier, American Airlines Inc., and three wholly owned regional subsidiaries that fly under the American Eagle brand: Envoy Air, Piedmont Airlines, and PSA Airlines."*

5. At all times relevant hereto, the intentional and negligent acts, of Defendant, were in violation of wife Plaintiff's ADA rights, and ACAA rights were committed by the Defendant's flight attendant, ground crew, working under the control and responsibility of Defendant by;

    a. failing to recognize the disability of wife Plaintiff;

    b. discrimination against wife Plaintiff, based on her disabilities and necessity of travel with service animals, violating 49 U.S.C. §41705;

    c. refusing a reasonable accommodation to allow for her disability;

    d. refusing to offer proper assistance and treatment in a respectful and courteous way to accommodate her disabilities; violating 49 C.F.R. §37.167(e); 49 C.F.R. §37.173;

    e. failing to offer training and refresher training to ensure proper treatment of disabled person such as wife Plaintiff including but not limited to their improper or incomplete training to operate in their capacity assigned, violating 49 C.F.R. §37.209;

    f. after excluding wife Plaintiff from travel by removal of her from flight, failing to provide a reason for her removal, during her removal and confinement nor a written explanation, violating Title 14 C.F.R. Part 382;

g. and other acts as set forth herein in violation of her rights under the ADA.

## COUNT I

### VIOLATION OF AMERICANS WITH DISABILITY ACT
### 42 U.S.C.S. §§12131-121165  et sec (ADA

### *AND*
### AIR CARRIER ACCESS ACT &  49 U.S.C. §41705
### *AND* Title 14 C.F.R. Part 382

4. Plaintiff's physical disabilities are readily apparent and visible, her impairments impede her ability to walk, and other physical activities. Her impairments resulting from a history of hip and spinal surgeries, with resulting readily displayed impairments.

At all times relevant hereto, the intentional and negligent acts, of Defendant, were in violation of wife Plaintiff's ADA rights, and ACAA rights were committed by the Defendant's flight attendant, ground crew, working under the control and responsibility of Defendant by;

a. failing to recognize the disability of wife Plaintiff;

b. discrimination against wife Plaintiff, based on her disabilities and necessity of travel with service animals, violating 49 U.S.C. §41705;

c. refusing a reasonable accommodation to allow for her disability;

d. refusing to offer proper assistance and treatment in a respectful and courteous way to accommodate her disabilities; violating 49 C.F.R. §37.167(e); 49 C.F.R. §37.173;

e. failing to offer training and refresher training to ensure proper treatment of disabled person such as wife Plaintiff including but not limited to their improper or incomplete training to operate in their capacity assigned, violating 49 C.F.R. §37.209;

f. after excluding wife Plaintiff from travel by removal of her from flight, failing to provide a reason for her removal, during her removal and confinement nor a written explanation, violating Title 14 C.F.R. Part 382;

5. Plaintiff's combined disabilities necessitate the mandatory assistance of Task Trained Service Animals, as defined by **U.S. Department of Transportation Service Animal Air Transportation Form,** which she provided to Defendant on previous flights, and always

accepted and approved by Defendant. Said actual applications for all segments of the trip, and approvals in the custody of Defendant.

    A. To the extent, available all DOT documents submitted to defendant are attached.

    B. Copies of all AA tickets 3 January, 2026 flight, available, are attached hereto.

    6. Plaintiff has been a frequent flyer with Defendant for many years, belonging to their Program for frequent flyers U831C74. She and her Husband have utilized the services of Defendant starting in 2021, flying with Task Trained, DOT approved, service animals and have continuously produced the necessary documentation allowing travel with all service animals.

    7. Plaintiff' husband U835LJ8 ,has disabilities as defined by the ADA, necessitating his use of a service animal, and has flown many times submitting the required documents, same format and content as were presented by Plaintiff on January 3, 2026, always have been accepted by Defendant. At all times relevant hereto the credentials to fly on Defendant's airline have been accepted by Defendant, and travel authorized. The same credentials set forth herein are the same credential presented to Defendant of January 3, 2026. (Copies attached herein)

    8. On previous flights, starting in 2021, originating in Fort Myers Florida, (KRSW), final destination Erie, both Plaintiff's being known by the staff of Defendant, were orally told that both the two service animals in the single, approved, under seat, carry on crate, would count a one service animal and could be listed as such. Plaintiffs relying on that conversation began classifying the Task Trained Bichons in the single crate as one service animal.

    9. In addition to the above procedure, on occasions where the Bichons were traveling in the same crate, on out bound travel, as well as travel originating in Erie, both Bichons were taken out of the crate, and walked from the Erie, PA check in counter, with the other Task Trained Service animal, Labradoodle, in plain view of the Defendant's employee, TSA staff, and into the boarding area. All in plain view of the Defendant's staff, never being challenged, nor questioned, suggesting approval by Defendant, and confirmation of the previously explained that the Bichons in a single crate are considered one service animal by Defendant.

    10. Defendant never challenged, objected to, nor disallowed both Bichons being treated as a single service animal, nor did Defendant reject the ability to travel with all service animals, , nor did Defendant disallow the application filed for service animals travel. At all times relevant

prior to January 3, 2026 and on the January 3, 3036 travel event, Defendant knew, should have known, Plaintiff when traveling with the animal carrier contained two Bichons, treating them as one, and a Labradoodle Task Trained Service Animal, and that as such did not create a hazard nor danger to travel, the aircraft or other passengers.

11. Plaintiff prior to her December 3, 2026 flight, purchased, on line, from the Defendant's internet site, the one way tickets from RSW to ERI and ERI - Denver. At all times relevant hereto, and relaying solely on the Defendant's ticket purchase and information site, wherein wife Plaintiff specified, under the special services section, she would be accompanied by her service dogs. During the purchase and reservation process, she added her service dogs as she had done numerous times in the past. By return email, Defendant approved the travel with service animals

12. Plaintiff purchased her travel tickets, on line, all service dogs be approved being approved by Defendant. (RSW-CLT-ERI) return (ERI-CLT-DEN). Conformation and approval of the service dogs provided by Defendant, on line.

13. On or about December 3, 2025, Plaintiff, with her service dogs, traveled on Defendant's Aircraft from Fort Myers, FL (RSW) thru Charlotte, NC to Erie, PA. Her travel was not interrupted, her service dogs approved, on all segments, including the smaller regional aircraft, there was never an issue with her traveling with the service animals. Defendant acknowledged her disability necessitating service dogs, and Defendant acknowledge her disability, which was clearly visible and ascertainable, allowed her accommodation to pre board.

14. On or about December 3, 2025, Plaintiff requested an accommodation, and was offered pre boarding on both segments, of all her flights on Defendants aircraft and with Defendants' crew/staff/, her physical disabilities being open and obvious to all of Defendant's ground and flight staff.

15. Upon her arrival at the Erie Airport, January 3, 2026 at 4:45 am, she had opened the carrying case for the approved, task trained service animals, Bichons, and walked them, on leashes, in plaint view, to the check in counter with the animal carrying crate on a dolly. Defendant's flight staff and the Defendant's ground crew had the ability to view the physical disabilities of Plaintiff, as well as the service animals to be crated upon entry to the aircraft. There was never a question of the authorization for travel with service animals.

16. On January 3, 2026, when Plaintiff arrived at the Defendant's check in Counter, she went through the procedure of showing her identification, was asked for and displayed the Defendant's acknowledgement of her travel with service animals, with the DOT Forms. Defendant's employee approved all documents and directed her to TSA, and thereafter the waiting area.

17. During her check in process, on January 3, 2026 Plaintiff told the Defendant's counter staff she was disabled and in need of extra time to board and asked for an accommodation, being allowed to Pre board. Defendant's staff member acknowledged her disability and request. Prior to January 3, 2026 Plaintiff had been always allowed pre boarding at Erie Airport, as well as all other airports, RSW and CLT. Once again, her disability being open and obvious demonstrated by her labored, slow, and uneven gait and inability to move in a normal manner, necessitating additional to board safely.

18. On January 3, 2026 Plaintiff, after clearing the Defendant's check in counter, receiving her boarding pass, was cleared through TSA, with the two Bichons, being taken out of the carry crate, and being walked or carried through TSA.

19. On January 3, 2026 Plaintiff was waiting to be called to preboard, as described above and authorized by Defendant's employee. Plaintiff motioned to the boarding agent for her preboarding, Defendant's gate agent had ignored the request for an accommodation, being to pre board, and called for the general boarding.

20. Plaintiff, anticipation of the flight boarding, again approached the Defendant's gate Employee and repeated her request for her accommodation to board early as she was disabled and needed extra time. The Defendant's gate agent refused her accommodation, ignored her disability, and directed Plaintiff to leave the boarding ramp approach and return to her seat in the waiting area. Plaintiff attempted to explain her disability and request for accommodation the gate agent ignored and refused the request. The gate agent compelled her to walk down an inclined ramp, displaying Plaintiff's disability and walk up again without assistance,

21. When Plaintiff was allowed to board, she boarded the Defendant's aircraft, passed the Defendant's male flight attendant, took her assigned seat, placing the service dogs in their create securely, and in accordance with instructions, under the seat in front of her.

22. The placement of the animal crate complied with the necessary allowance of floor area between the carrier and the seat, and allowed for exist by the adjacent seated passenger.

The placement and room available was the same as allowed by the placement of a small carryon, as a backpack, and had been approved on every previous flight on Defendant's aircraft.

23. At no time did any passenger complain or object to the service dogs, or their placement in the aircraft, nor did the service animals make and noise or create a disturbance interrupting the flight, or creating as safety to flight.

24. Awaiting the cabin door to be closed, Defendant's Male flight attendant, aggressively approached Plaintiff, suddenly and without warning nor justification, stood over her, and forced his face into her face, about 7 inches away, and in a threatening and intimidating manner, told her you have to get off the aircraft The male flight attendant's unwarranted and unjustified intentional actions, put her in imminent threat of bodily harm. His mannerism and threatening manner and demand placed Plaintiff in fear of actual physical retribution if she did not immediately comply, she was in fear for her safety. She feared, and became apprehensive based on the verbal and near physical attack, for her safety and was certain if she failed to immediately comply she would be physically removed from the aircraft.

25. The male flight attendant, blocked Plaintiff's ability to get up and retrieve her overhead back pack, she asked the flight attendant why he was forcing her off the aircraft, he refused explanation, frightening her and intimidating her ignoring her physical disability. Plaintiff explained she was disabled, asked for help as she was being forced off the aircraft, the flight attendant refused and kept moving toward the exit, forcing Plaintiff to move or be physically forced to move, disregard her disability; her free movements were restricted she was forced to comply. The actions of the male flight attendant placed her in physical custody denying her freedom of choice to move about.

26. Defendant brought another employee onto the aircraft to assist in Plaintiff's physical removal, again refusing the request for an accommodation to help her with her back pack and the service animals in their crate both employees treated her as though she was in custody and did not have free will to move, as though she was under arrest or detained against her will. Plaintiff feared for her safety were she to refuse immediate compliance.

27. During Plaintiff's exit from the aircraft there was a long, narrow jet way, she asked the flight attendant for help, asking for an accommodation to aid her in their removal of her from the aircraft, explaining her disability, he refused. The additional employee of Defendant went

ahead of her and kept telling her to keep. Plaintiff kept explaining she was disabled and could not walk any faster, again asked for an accommodation, but was refused.

28. Upon clearing the jet ramp, the additional employee of Defendant took her into custody and escorted her into the waiting area and told do not leave. At that time she was confined to the waiting area and directed not to leave. The mannerism and way the threat was delivered inferred punitive actions would be taken if she left. The great apprehension of physical retribution caused her to comply with the unauthorized detention.

29. It is averred and believed, and alleged and asserted the male flight attendant disliked the service animals, his actions demonstrated he wanted to violate the ADA rights of wife Plaintiff in not allowing service animals on the flight. The actions of the other employee of Defendant is escorting Plaintiff from the aircraft, jet way, into the waiting area further denied Plaintiff freedom of choice in movement and created a real threat of physical violence were she to refuse to comply.

30. Plaintiff was told to not leave the boarding area, compelled to wait in the boarding area until she was to be escorted, in the custody of Defendant's employee, to follow into the ticket counter area, where she was again told to wait, not leave. Plaintiff was apprehensive of the threats made by the Defendant's employees and her request to leave denied.

31. Plaintiff tried to explain she was frightened, in pain from the physical exertion caused by her unreasonable and compelling manner she was forced off the aircraft and wanted to leave and go to her home, her request for an accommodation to alleviate her pain and fear, denied. Her movements and free will denied.

32. At no time relevant hereto, did Plaintiff consent to her confinement. At all times relevant hereto Defendant's employees willfully and intentionally acted to restrain her and their actions were against the will and desire of Plaintiff, made with the intent to confine plaintiff against her free will.

33. After waiting under the confinement instruction of Defendant's employees, Plaintiff, was made to purchase another ticket on a later flight, charged for a "pet in cabin", denying her the right and accommodation of the previously allowed service dogs, and after payments, allowed to board the later flight, using the same carrier and same placement.

34. Defendant intentionally violated the following sections of the ADA:

a. *Americans with Disabilities Act  42 U.S.C.S. §§12131-121165  and the Rehabilitation Act,* each prohibit public entities from excluding, denying access to or otherwise discriminating against any person because of a disability *42 U.S.C.S.  §12132;  29 U.S.C.S., §794 ;  49 C.F.R.  §37.5 as adopted by the Secretary of Transportation pursuant to the above statutes prohibit discrimination against an individual with a disability in connection with transportation services.*

1.  Plaintiff was denied an accommodation to pre board;

b. *49 C.F.R.  §37.5 as adopted by the Secretary of Transportation pursuant to the above statutes prohibit discrimination against an individual with a disability in connection with transportation services*

1.  Plaintiff was denied her ADA rights and discriminated against based on her disability and need for task trained service animals.

2.  Plaintiff was wrongfully subject to discrimination based on her disability by the threatening and intimidating nature of her wrongful removal from the aircraft and refusal to grant an accommodation for help.

c. **Accommodation**, as referenced in this complaint shall mean and include, *49 C.F.R. §37.167(e); 49 C.F.R. §37.173 requiring proper assistance and treatment of individuals with disabilities in a respectful and  courteous way.    49 C.F.R. §37.207 PROHIBING any operator to deny transportation to passengers with disabilities or to fail or refuse to comply with any applicable provision of Title 49 (Transportation); Part 37 (Transportation Services for Individuals with Disabilities).*

1.  Plaintiff was denied her ADA rights and discriminated against by reason of her disability and the abusive, threatening and unwarranted conduct of the Defendant's employees both ground and flight, while on the ground.

2.  Plaintiff was denied her ADA rights and discriminated against by Defendant's flight and ground employees, by their forceful removal from the aircraft,  refusal to comply with the properly presented credentials for Task Trained Service Animals.

3.  Plaintiff was denied her ADA rights and discriminated against by Defendant denying her transportation, forceable removing her from her flight, without justification, and based on her need for Task Trained Service Animals, previously approved by Defendant for the flight.

d. **Air Carrier Access Act, (ACAA)** as referenced in this complaint shall mean and include *49 U.S.C. §41705 prohibiting discrimination on the basis of a disability.*

1. Plaintiff was denied her ADA and ACAA, rights and discriminated against by Defendant denying her flight access based on her disability and need for service animals, and failure to grant her accommodations necessary for her visible disability.

e. *Title 14 C.F.R. Part 382 refusing transportation to people on the basis of disability.* If a carrier excludes a person with a disability on safety grounds, the carrier must provide a written explanation of the decision.

1. Plaintiff was denied her ADA rights and discriminated against by wrongfully and forcibly removing her from a flight, without justification and when asked for a reason refusing to do so.

2. Plaintiff has continuously requested a truthful explanation of her forcible removal, and to date, has not received a reason, as required.

35. As a direct and proximate result of the above violations, and abuse, wife Plaintiff has suffered:

a. Physical fear of battery and apprehensive of other punitive measures from Defendant;
b. Embarrassment and humiliation;
c. Fear of repeated discrimination due to her disabilities by Defendant and other carriers;
d. Need for sedation and counseling for her fear of travel;
e. Necessity of an alternate arrival airport for her travel to Erie, PA due to her fear of mistreatment and failure to allow her the accommodations needed for her disabilities from the Defendant's employees at the Erie Airport.
f. Monetary damages, as yet undetermined for substitute travel;
g. Concern for retribution from Defendant due to her filing this complaint.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter;

1. A Finding of ADA and ACAA Violations with the penalties prescribed;
2. Monetary award for her physical removal from the aircraft, and detention;
3. Costs of the litigation;
4. Other awards deemed "fit and proper"
   A JURY TRIAL IS REQUESTED FOR THE ISSUES IN THIS COUNT

## COUNT II
### INTENTIONAL CIVIL BATTERY
### SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)

36. The previous definitions, allegations, references, and information are incorporated herein for information and clarity and continuity purposes as fully set forth.

37. At all times relevant hereto the acts of Defendant flight attendant, were intentional, without justification nor cause, against the will and safety of wife Plaintiff, without justification nor permission, placing his face with 7 inches of plaintiff's face, and making threatening demands, as done by the Defendant's flight attendant, were done intentionally, with the express intent to create the fear and apprehension of imminent physical violent contact and harm to Plaintiff wife. The Defendant's male flight attendant acted with the purpose of causing a certainty of imminent contact and with the intent to put wife Plaintiff in fear and substantial certainty that contact would result.

38. The acts set forth herein were done without justification, cause nor reason, and done without permission of Plaintiff, when asked why he was forcing her off the aircraft he refused comment. The male flight attendant had the ability to carry out his threats and actions, supported by his physical demeanor and threatening position he placed himself over wife Plaintiff, knowing or having reason to know she was a disabled person and unable to defend herself. Plaintiff was made to believe she had to immediately comply or suffer consequences; she so complied against her free will.

39. The acts of Defendant flight attendant, and the subsequent acts of confinement and detention, by the other employee of Defendant created a fear, apprehension of physical violence if she failed to cooperate.

40. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer a fear of repeated conduct, reprisals from Defendant, fear and apprehension of air travel, and inability to travel without accompaniment for her safety, and other injuries needing to be treated.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an award:

1. Compensatory damages, including the additional costs for her travel and treatments;

2. Punitive damages compensating for the intentional battery;

3. Costs of litigation;

**4.** Other awards and damages deemed fit and proper

<u>A JURY TRIAL IS REQUESTED FOR THE ISSUES IN THIS COUNT</u>

<u>COUNT III</u>
<u>NEGLIGENT CIVIL BATTERY</u>
<u>SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)</u>
28 U.S.C. § 1367  SUPPLEMENTAL JURISDICTION.

41. The previous definitions, allegations, references, and information are incorporated herein for information and clarity and continuity purposes as fully set forth.

42. Defendant had a duty to provide safe travel to Plaintiff and to train their employees and staff on proper procedures in dealing with a handicapped person, and in the event of a real threat to safe travel to properly and with care make a full explanation of their actions as they related to a passenger.

43. Defendant had a duty to insure their ground and flight employees and staff, would properly adhere to all ADA, ACAA, and related rules, statutes, ordinances, relating to passenger treatment, including but not limited to

    a. requests for accommodations,

    b. contact, and proximity for instructions;

    c. procedures and reasons for removal from a flight;

    d. procedures for confinement after removal from a flight;

    e. necessity of full explanation for removal;

    f. protection of passenger from abusive behavior of other Defendant employees or staff.

44. Defendant breached that duty by allowing or failing to properly secure the safety of wife Plaintiff as set forth in the paragraphs above, the abusive, and fearful conduct of their ground staff and flight attendant.

45. As a direct and proximate result of the breach of duty by Defendant, and through no cause of Plaintiff, she has suffered and will continue to suffer the following damages:

    a. fear of repeated conduct, reprisals from Defendant;

    b. fear and apprehension of air travel;

    c. inability to travel without accompaniment for her safety,

d. and other continuing injuries needing to be treated.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an award:

1. Compensatory damages, including the additional costs for her travel and treatments;

2. Punitive damages compensating for the intentional battery;

3. Costs of litigation;

4. Other awards and damages deemed fit and proper

<u>A JURY TRIAL IS REQUESTED FOR THE ISSUES IN THIS COUNT</u>

## <u>COUNT IV</u>
### <u>INTENTIONAL CIVIL ASSAULT</u>
### <u>SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)</u>

46. The previous definitions, allegations, references, and information are incorporated herein for information, clarity and continuity purposes as fully set forth.

47. In addition to the actions which constitute a battery, committed by Defendant's employees as set forth above, Defendant's employees, both ground and on the aircraft, have committed the intentional act of assault of Plaintiff. Causing fear, and apprehension of physical reprisal for not complying with the Defendant's demands.

48.. At all times relevant hereto the acts of Defendant flight attendant, were intentional, without justification nor cause, against the will and safety of wife Plaintiff, without justification nor permission, by placing his face with 7 inches of plaintiff's face, and making threatening demands, were done intentionally, with the express intent and motive to create the fear and apprehension of imminent harmful and offensive physical violent contact and harm to Plaintiff wife. The Defendant's male flight attendant had the physical ability to carry out his threats, acted with the purpose of causing a certainty of imminent contact and with the intent to put wife Plaintiff in fear and substantial certainty that contact would result if she did not immediately comply with his demands.

49. It is averred and believed and alleged and asserted Defendant flight attendant, and the ground employee accompanying him, intentionally wanted to put Plaintiff in reasonable

apprehension of imminent harmful and offensive contact. Their severity of their assault was intensified by reason of wife Plaintiff's disabilities, and her pleas for help which were ignored.

50. The acts, physical, verbal, and intentional, of Defendant flight attendant, and the subsequent acts of confinement and detention, by the other employee of Defendant were harmful, and offensive, thus created a fear, apprehension of imminent physical violence if she failed to cooperate.

51. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer a fear of repeated conduct, reprisals from Defendant, fear and apprehension of air travel, and inability to travel without accompaniment for her safety, and other injuries needing to be treated.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an award:

1. Compensatory damages, including the additional costs for her travel and treatments;

2. Punitive damages compensating for the intentional battery;

3. Costs of litigation;

4. Other awards and damages deemed fit and proper

## A JURY TRIAL IS REQUESTED FOR THE ISSUES IN THIS COUNT

## COUNT V
## NEGLIGENT CIVIL ASSULT
## SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)

52. The previous definitions, allegations, references, and information are incorporated herein for information, clarity and continuity purposes as fully set forth.

53. Defendant had a duty to provide safe travel to Plaintiff and to train their employees and staff on proper procedures in dealing with a handicapped person, and in the event of a real threat to safe travel to properly and with care make a full explanation of their actions as they related to a passenger, in a reasonable and non-threatening manner.

54. Defendant had a duty to insure their ground and flight employees and staff, would properly adhere to all ADA, ACAA, and related rules, statutes, ordinances, relating to passenger treatment, including but not limited to:

a. requests for accommodations,

b. contact, and proximity for instructions;

c. procedures and reasons for removal from a flight;

d. procedures for confinement after removal from a flight;

e. necessity of full explanation for removal;

f. protection of passenger from abusive behavior and language of Defendant's employees or staff.

55. Defendant breached that duty by allowing or failing to properly secure the safety of wife Plaintiff as set forth in the paragraphs above, the abusive, and fearful conduct and verbal abuse and threatening nature, of their ground staff and flight attendant.

56. As a direct and proximate result of the breach of duty by Defendant, and through no cause of Plaintiff, she has suffered and will continue to suffer the following damages:

a. fear of repeated conduct, reprisals from Defendant;

b. fear and apprehension of air travel;

c. inability to travel without accompaniment for her safety,

d. and other continuing injuries needing to be treated.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an award:

1. Compensatory damages, including the additional costs for her travel and treatments;

2. Punitive damages compensating for the intentional battery;

3. Costs of litigation;

4. Other awards and damages deemed fit and proper

<u>A JURY TRIAL IS REQUESTED FOR ALL ISSUES IN THIS COUNT</u>

<u>COUNT VI</u>
<u>INTENTIONAL CONFINEMENT</u>
<u>CIVIL FALSE IMPRISONMENT</u>
<u>SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)</u>

57. The previous definitions, allegations, references, and information are incorporated herein for information, clarity and continuity purposes as fully set forth.

58. At all times relevant hereto, the acts of Defendant's employees were intentional, and conspired to deprive Plaintiff of her free will of movement, which confined her to a specific set of boundaries, under threat of punitive actions if she disagreed or would not follow their instructions. The Defendant's employees had no legal right nor justification to confine her against her will.

59. At all times relevant hereto, Plaintiff repeatedly asked why she was removed from the flight and why she was confined her requests went unanswered.

60. At all times relevant hereto, Plaintiff's disabilities were open and obvious and her please for assistance were ignored or refused.

61. At all times relevant hereto, Defendant's employees by their mannerisms, verbal commands, and refusal to explain why she was removed, created a reasonable threat of punitive actions if she did not comply with their confinement areas and to wait for them to physically escort into another determined place against her will.

62. At all times relevant hereto, Plaintiff was aware of her confinement, and was unable to leave for fear of Defendant's punitive actions.

63. The acts of confinement include but are not limited to:

a. The male flight attendant intentionally blocking free access off the aircraft;

b. female employee intentionally blocking any other direction of travel, on the aircraft other than obey the direction of the flight attendant; both of Defendant's employees creating a blockade, denying free will movement, mandating strict compliance with their custody;

c. Upon exiting the aircraft onto the "jet bridge", the female employee mandating she follow her down the ramp, and refusing to allow free access once free of the ramp;

d. female employee directing and instructing not to leave the boarding areas, creating strict boundaries which plaintiff was not allowed to leave without being in custody of the employee being present.

e. refusing the requests to leave the airport, and in a threatening manner telling her to stay put, creating a specific boundary, until the female employee returns;

f. restricting free will in choice of directions to take when trying to leave the boarding area; mandating, ordering the direction of travel to be taken, against Plaintiff's free will;

g. mandating the directions to follow employee to ticket counter and refusing the right to leave, the terminal;

h. otherwise intentionally acting to restrict Plaintiff's movements and confinement to the areas designated by defendant.

i. all of the above acts done without legal authority, and the intent to confine.

64.    As a direct and proximate result of Defendant's actions, wife Plaintiff has suffered and will continue to suffer a fear of repeated conduct, reprisals from Defendant, fear and apprehension of air travel, and inability to travel without accompaniment for her safety, and other injuries needing to be treated.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an award:

1. Compensatory damages, including the additional costs for her travels, medical treatments;

2. Punitive damages compensating for the intentional battery;

3. Costs of litigation;

4. Other awards and damages deemed fit and proper

## A JURY TRIAL IS REQUESTED FOR ALL ISSUES IN THIS COUNT

## COUNT VII

## MARVIN RICHARD MELLON
## LOSS OF CONSORTIUM
## SUPPLEMENTAL JURISDICTION (28 U.S.C. § 1367)

65. Husband Plaintiff, incorporates by reference the allegations and violations as set fort in previous paragraphs.

66. Aa a direct and proximate result of the actions, violations and injuries and damages caused by Defendant, husband Plaintiff has suffered:

a. diminished quality of marital life;

b. loss of wife's participation in household activities;

c.  additional costs for future travel to the Veterans' campus caused by wife Plaintiff's fear of traveling to Erie, PA. must now travel via Buffalo and on other airlines due to wife plaintiff refusal to fly on Defendant carrier;

d.  other losses yet to be determined.

## A JURY TRIAL IS REQUESTED FOR ALL ISSUES IN THIS COUNT

RESPECTFULLY SUBMITTED,

Melanie Louise Mellon, Pro Se

Marvin Richard Mellon, Pro Se

16 April 2026